UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x
TIMOTHY CANTWELL and JOSEPH
DELLIGATI,

                          Plaintiffs,

         -against-

SPECIAL AND SUPERIOR OFFICERS
BENEVOLENT ASSOCIATION and JAMES J.
PIZZULI,

                         Defendants.
------------------------------------------------------------x

**MEMORANDUM & ORDER**

07-CV-1154 (ENV) (CLP)

**VITALIANO, D.J.**

Plaintiffs Timothy Cantwell and Joseph Delligati filed this action against their former union, the Special and Superior Officers Benevolent Association ("SSOBA" or "the union"), and its president, James J. Pizzuli (collectively, "defendants"), alleging violations of federal labor law arising from SSOBA's decision to disclaim interest in certain members, including plaintiffs, employed as security guards at Long Island Jewish - North Shore Hospital ("LIJ"). The causes of action purport to arise under sections of the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 158(b)(1)(A) and 158(b)(3), the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. §§ 411(a), 412, and 529, the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 301, and as a matter of state contract law. Defendants move to dismiss the complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). For the reasons stated below, the motion is granted to the extent that plaintiffs' first cause of action is dismissed with prejudice, and plaintiffs' remaining causes of action are dismissed without prejudice and with leave to replead within 20 days of the entry of this Memorandum and Order.

1

## I. BACKGROUND

The following facts are drawn from the complaint, and all reasonable inferences are construed in favor of plaintiffs. See Gorman v. Consol. Edison Corp., 488 F.3d 586, 591-92 (2d Cir. 2008).

SSOBA was founded in 1972, with the original purpose of representing the security guards at LIJ (the "LIJ employees"). The union now represents over 2,000 security officers throughout New York City and Long Island. Cantwell became an LIJ employee and joined SSOBA in 1999; Delligatti did so in 2002. On January 1, 2004, SSOBA appointed Cantwell as a delegate to represent the union in grievances with LIJ management.

Cantwell ran unsuccessfully for SSOBA president in 2004, and announced his intention to run again in 2007. Cantwell was removed from his delegate position in November 2004. After the 2004 election loss, Cantwell and two other unsuccessful candidates for union office filed a complaint with the Department of Labor challenging the election. Consequently, on July 8, 2005, the Department of Labor commenced an action against SSOBA before this Court, Chao v. Special & Superior Officers Benevolent Assoc., No. 05-CV-3261.

On December 7, 2006, at a meeting of LIJ employees and management, Jerry Ryan, LIJ's director of security, announced that SSOBA would disclaim all interest in the LIJ employees upon the expiration of the collective bargaining agreement ("CBA") between SSOBA and LIJ on December 31, 2006. There were no SSOBA representatives at the meeting. A letter from SSOBA was posted at the LIJ jobsite, however, informing the LIJ employees that the union had disclaimed the members because they had filed too many grievances. The LIJ employees made repeated attempts to communicate with the union, but they were unsuccessful. Ultimately, the

LIJ employees did not acquire new representation, and the CBA between SSOBA and LIJ expired.

Once the CBA expired, automatic deduction of SSOBA dues from the paychecks of LIJ employees, including the plaintiffs, ceased. Although plaintiffs believed that they had been expelled from the union, neither they nor any of the other LIJ employees ever received a delinquency notice, or notice of suspension or expulsion for delinquency.

When no new CBA was negotiated, the LIJ employees, including plaintiffs, became at-will employees. Cantwell has remained so; Delligatti's employment status is unknown. Plaintiffs allege that some of the rights that had existed under the CBA have been abrogated by their employer but have made no specific allegations in that regard. Further, they make no allegation that the disclaimer of interest or the subsequent expiration of the CBA resulted in the loss of employment or any change in the hours, wages, or conditions of employment of any LIJ employees.

Plaintiffs contend that SSOBA's action was retaliation for Cantwell's opposition to the union leadership, that Cantwell and his co-workers accounted for the only opposition to that leadership, and that SSOBA acted to stifle dissent.

## II. STANDARD OF REVIEW

To survive dismissal under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (U.S. 2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. Plaintiffs must provide more than a "formulaic recitation of

the elements of a cause of action." Twombly, 550 U.S. at 555. A court must presume the truth of all factual allegations in the complaint for purposes of Rule 12(b)(6), but the court is not bound to accept the truth of legal conclusions couched as factual allegations. Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 2944 (1986). In analyzing well-pled facts, a court will draw all reasonable inferences in favor of the plaintiff, see Gorman, 488 F.3d at 591-92, and this also holds true in the context of a motion to dismiss made pursuant to Rule 12(b)(1) based on lack of subject matter jurisdiction, see Robinson v. Gov't of Malaysia, 269 F.3d 133, 140 (2d Cir. 2001). Moreover, "[a] case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).

### III. ANALYSIS

#### A. Duty of Fair Representation Claim

Plaintiffs' first cause of action alleges a breach of the duty of fair representation in violation of the NLRA.[1] The duty of fair representation requires a union to represent the interests of all members during the negotiation, administration, and enforcement of collective bargaining agreements without acting arbitrarily, discriminatorily, or in bad faith. Price v. Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am., 927 F.2d 88, 92 (2d Cir. 1991).

However, union actions that neither involve the employer nor have an effect on the conditions of employment are considered internal union matters, excluded from the duty of fair representation. Price v. Int'l Union, United Auto., Aerospace and Agr. Implement Workers of

---

[1] District courts retain jurisdiction over properly pled claims that the duty of fair representation was violated, notwithstanding the fact that the National Labor Relations Board normally has primary jurisdiction over claims arising under the NLRA. See, e.g., Marquez v. Screen

Am., 795 F.2d 1128, 1134 (2d Cir. 1986), vacated on other grounds, 487 U.S. 1229 (1988). "[T]he duty of fair representation can only arise when all three parties [union, employee and employer] are involved." Id. at 1134. Consequently, a plaintiff must allege an adverse action by the employer, or a substantial effect on the conditions of employment, for a duty of fair responsibility representation claim to survive dismissal under Rule 12. See Beck v. Commc'ns Workers of Am., 800 F.2d 1280 (4th Cir. 1986) (collection and use of fees implicates the duty of fair representation when the failure to pay fees results in discharge); Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am., Local No. 310 v. Nat'l Labor Relations Bd., 587 F.2d 1176 (D.C. Cir. 1978) (binding plaintiffs without their consent to a new CBA, determining their rights vis-à-vis their employer going forward, implicates the duty of fair representation); Retana v. Apartment, Motel, Hotel and Elevator Operators Union, Local No. 14, AFL-CIO, 453 F.2d 1018 (9th Cir. 1972) (failure to accommodate non-English speaking members left plaintiff unable to exercise her rights vis-à-vis her employer under the CBA, and she was discharged, properly stating a duty of fair representation claim); Reid v. McDonnell Douglas Corp., 443 F.2d 408 (10th Cir. 1971) (allegation that union action will result in the employer discharging the employee gives rise to a duty of fair representation claim); cf. Price, 795 F.2d 1128 (procedure adopted to determine union dues does not implicate the duty of fair representation); Kolinske v. Lubbers, 712 F.2d 471(D.C. Cir. 1983) (distribution of strike benefits is an internal union matter); Kirk v. Transport Workers Union of America, AFL-CIO, 934 F. Supp. 775 (S.D. Tex. 1995) (a union publishing a newsletter that is critical of a faction within the union did not violate the duty of fair representation because it did not affect employment status).

---

Actors Guild, Inc., 525 U.S. 33, 50, 119 S. Ct. 292, 302 (1998).

The complaint alleges that SSOBA breached the duty of fair representation by disclaiming interest in the LIJ employees arbitrarily and in bad faith. (Am. Compl. ¶¶ 25-29.) Plaintiffs assert that SSOBA's disclaimer of interest affects the conditions of employment for the LIJ workers because the workers were abandoned and did not have a new CBA negotiated on their behalf. (Id. ¶ 25.) But plaintiffs fail to allege any adverse action taken by LIJ against them, or any effect on their conditions of employment, resulting from SSOBA's disclaimer of interest. Plaintiffs have not alleged any detrimental impact on their "rates of pay, wages, hours of employment, or other conditions of employment." 29 U.S.C. § 159; see also Teamsters v. NLRB, 587 F.2d at 1182. Their only allegation of harm is the expiration of their old CBA with the hospital, which is not sufficient, by itself, for plaintiffs to plead that their employment has been affected. A collective bargaining agreement is not an end in itself but a means to an end: it is a vehicle for securing better "rates of pay, wages, hours of employment, or other conditions of employment." 29 U.S.C. § 159.

Moreover, unlike the plaintiffs in Teamsters v. NLRB, who found themselves bound without their consent to a new CBA with their employers — which resulted in some Teamster members being discharged for striking — plaintiffs here suffered no ill effects on their employment relationship with LIJ going forward and were not bound by any SSOBA action or agreement with LIJ. Indeed, when asked to provide the Court with a declaration on the current status of this case, plaintiffs described this matter as arising "from a dispute between opposing factions in a labor organization," and described their injuries by noting only that they "are no longer members of the SSOBA, and, therefore, are no longer eligible to vote in the union or seek office in the union or otherwise participate in the affairs of the union." (Pennington Decl. ¶¶ 3, 5.) In other words, this case involves a purely internal union matter that is not cognizable on a

claim for breach of the duty of fair representation. Without any allegations that LIJ took any action or that their employment with LIJ was affected, plaintiffs' duty of fair representation claim must be dismissed.

### B. Violation of Contract between Labor Organizations under LMRA § 301

Plaintiffs next allege a violation of the SSOBA constitution and by-laws under LMRA § 301, 29 U.S.C. § 185(a). Section 301 provides federal jurisdiction over suits alleging violations of contracts between labor organizations. See Woodell v. Int'l Bhd. of Elec. Workers, 502 U.S. 93, 98, 112 S. Ct. 494, 498 (1991). Such a dispute can arise between two unions, such as a parent labor organization and its subordinate local unions, and the cause of action may be brought by individual union members. See id., 502 U.S. at 101, 112 S. Ct. at 500; see also Shea v. McCarthy, 953 F.2d 29, 32-33 (2d Cir. 1992). Section 301 does not apply, however, to alleged violations of a local union chapter's constitution. See, e.g., Green v. Brigham, No. 03-CV-5190, 2005 WL 280327, at *11 (E.D.N.Y. Feb. 3, 2005) ("While violations of an international union's constitution (which involves an agreement between the international and its constituent locals) are actionable, violations of a local union's constitution (which involves disputes between an individual member and a union) are not.")

Here, plaintiffs argue that the SSOBA constitution identifies SSOBA as "an International Labor Organization/Union subject to applicable federal law." (Pls.' Br. 11.) The complaint repeatedly identifies the LIJ employees as a "unit," though it does not contain any further details as to the official structure of that "unit," such as whether it was considered a constituent local chapter of SSOBA. It is clear, however, that SSOBA represents several thousand members at numerous employers in the New York metropolitan area. At this threshold stage, at any rate, the Court must construe all reasonable inferences in favor of the plaintiffs, see Vietnam Ass'n for

7

Victims of Agent Orange v. Dow Chem. Co., 517 F.3d 104, 115 (2d Cir. 2008), and the Court may reasonably infer that SSOBA is not a single local union but instead comprises subgroups at various employers, regardless of whether they are formally labeled as local chapters. The complaint adequately pleads a plausible claim of a violation of an interunion agreement. The truth or falsity of that claim is a subject for discovery. The union's motion to dismiss the Section 301 claim is therefore denied.

### C. Violations of the LMRDA

Plaintiffs next allege illegal retaliation under the LMRDA in their third and fourth causes of action. Section 101 of the LMRDA guarantees union members a number of rights, including "equal rights . . . to vote in elections or referendums of the labor organization, to attend membership meetings, . . . to participate in the deliberations and voting upon the business of such meetings," 29 U.S.C. § 411(a)(1), rights "to meet and assemble freely with other members; ... to express any views, arguments, or opinions," including views "upon candidates in an election of the labor organization," 29 U.S.C. § 411(a)(2), and notice and hearing rights in disciplinary proceedings, 29 U.S.C. § 411(a)(5). Section 102 of the LMRDA provides a federal cause of action for infringement of the rights set forth in Section 101. See 29 U.S.C. § 412 ("Any person whose rights secured by the provisions of this title have been infringed by any violation of this title may bring a civil action in a district court of the United States."). A separate provision of the LMRDA, section 609, also protects a union member from fines, suspensions, expulsions, or other discipline for exercising any right guaranteed by the LMRDA. See 29 U.S.C. § 529. A section 102 claim requires a showing of union infringement of the guaranteed rights, while a section 609 claim requires an additional showing of union discipline in retaliation for the

8

exercise of those rights. See, e.g., Cotter v. Owens, 753 F.2d 223, 226 (2d Cir. 1985); DeCarlo v. Salamone, 977 F. Supp. 617, 623-24 (W.D.N.Y. 1997).[2]

The complaint contains sufficient factual allegation to support claims under the LMRDA. Plaintiffs allege that they voiced opposition to SSOBA leadership and their intention to continue that opposition in the future, and that, as a result, they were expelled from the union without warning. Once the LIJ employees were unrepresented, they could no longer take part in any union activities. SSOBA's argument that the LIJ employees' union membership was terminated for nonpayment of dues is wholly unavailing. The complaint plainly asserts that the union's disclaimer occurred before any nonpayment of dues and that the LIJ employees interpreted the disclaimer as expulsion from the union, particularly given the union's alleged refusal to communicate with them. SSOBA effectively wants to define "disclaimer of interest" as something other than expulsion or discipline. Notably, neither side points to any law addressing this particular question, but, in any event, such an argument is premature at the dismissal stage. Absent any authority to the contrary, what matters are plaintiffs' allegations of actual union conduct rather than the label the union chooses to give to that conduct. As for whether the union's alleged actions may have been proper under SSOBA rules or disciplinary processes, that is beyond the current inquiry, and it is a question for discovery or a future motion for summary judgment. Here, the inquiry is simply whether plaintiffs have pled enough factual allegations to present plausible claims under the LMRDA, see Iqbal, 129 S. Ct. at 1949, and the Court finds that they have succeeded in that task.

---

[2] Plaintiffs pled their third cause of action (for infringement of their section 101 rights) without reference to section 102 of the LMRDA, whereas they pled their fourth cause of action (for discipline in response to exercise of LMRDA rights) citing both section 102 and section 609. The Court will treat plaintiffs' third cause of action as a claim under section 102, 29 U.S.C. § 412, and their fourth cause of action as a claim under section 609, 29 U.S.C. § 529.

### D. State Law Contract Claim

In their amended complaint, plaintiffs have added a fifth claim, namely, that the union's action consituted a breach of the SSOBA constitution actionable under New York law. The Court has supplemental jurisdiction over this state law claim so long as the federal claims survive dismissal, and the parties do not contest this. See 28 U.S.C. § 1367. The union argues, however, that plaintiffs' claim is forbidden under Martin v. Curran, 303 N.Y. 276 (1951), which holds that voluntary, unincorporated associations cannot be sued for tort unless the tort is provable against each and every member of the association. But Martin is inapposite here, as New York law specifically allows suits for breach of contract against an unincorporated union for wrongful expulsion of its members, without the need to prove the claim against all of the union's members. See Madden v. Atkins, 4 N.Y.2d 283, 295, 151 N.E.2d 73, 79 (1958) (recognizing "the right of one wrongfully expelled to recover damages from the union, for what amounts to a breach of contract, even though only a portion of its membership may have favored, or voted for, the action taken"); see also Jund v. Town of Hempstead, 941 F.2d 1271, 1281 (2d Cir. 1991). Madden is on point and is the controlling state law precedent here.

SSOBA's argument that the state law claim is somehow preempted under San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon, 359 U.S. 236, 245, 79 S. Ct. 773, 780 (1959), is similarly unpersuasive. The union cites the general principle that claims "arguably" within the scope of the NLRA shall be heard by the NLRB rather than in state or federal court, id.; see also, e.g., TKO Fleet Enterprises, Inc. v. District 15, Intern. Ass'n of Machinists & Aerospace Workers, AFL-CIO, 72 F. Supp. 2d 83, 87 (E.D.N.Y. 1999) ("Congress decided that *both* federal and state courts are preempted from deciding cases arguably subject to

§ 7 or § 8 of the NLRA."), but SSOBA fails to make any arguments of its own as to why or how plaintiffs' state law contract claim is covered by the NLRA.

In fact, the NLRA is irrelevant to plaintiffs' contract claim. The purpose of the NLRA is to regulate relations between employers and employees. See Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 753-54, 105 S. Ct. 2380, 2396 (1985) ("The NLRA's declared purpose is to remedy '[t]he inequality of bargaining power between employees who do not possess full freedom of association or actual liberty of contract, and employers who are organized in the corporate or other forms of ownership association.'") (quoting 29 U.S.C. § 151). Both the United States Supreme Court and New York state courts have therefore held that claims dealing with purely internal union matters are not preempted by the NLRA, notwithstanding the Garmon doctrine. See Int'l Ass'n of Machinists v. Gonzales, 356 U.S. 617, 621-22, 78 S. Ct. 923, 925-26 (1958); Tantillo v. McDonald, 223 A.D.2d 168, 645 N.Y.S.2d 804 (1st Dep't 1996). Indeed, the Gonzales case dealt with a claim much like the one presented here, with a plaintiff alleging improper expulsion from a union and a breach of the union constitution, i.e. "the breach of a contract governing the relations between [plaintiff] and his union[]," and the Court ruled that the breach of contract claim was not preempted by the NLRA. Gonzales, 356 U.S. at 621-22, 78 S. Ct. at 926. In the case at bar, as has already been established, see Part III.A, supra, the complaint concerns purely internal union matters, with no claims that SSOBA's alleged wrongdoing has somehow resulted in any LIJ employees being terminated or suffering a detrimental impact on their wages, hours, or other terms of employment. Garmon preemption is thus inapplicable.

However, while plaintiffs' claim is not barred as a matter of New York law or preempted under the NLRA, it presently fails to identify the specific "due process provisions of the SSOBA

Constitution" that the union allegedly violated. (Am. Compl. ¶ 47.) Without such factual detail, plaintiffs' claim states merely a legal conclusion that SSOBA breached its contract, and the claim falls short of plausibility and fails to give SSOBA the basic notice required by Rule 8 as to the allegations against it. See Iqbal, 129 S. Ct. at 1949. The fifth cause of action is therefore dismissed without prejudice and with leave to replead within 20 days.

## IV. CONCLUSION

For the foregoing reasons, SSOBA's motion is granted to the extent that the first cause of action is dismissed with prejudice, and the fifth cause of action is dismissed without prejudice and with leave to replead within 20 days. The motion is otherwise denied.

SO ORDERED.

Dated: Brooklyn, New York
March 17, 2011

s/ENV

_____
ERIC N. VITALIANO
United States District Judge